1

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                            **DISTRICT OF NEVADA**

8

9    GREGORY AMATO,                          )
                                             )
10                  Petitioner,              )        3:10-cv-00670-LRH-VPC
                                             )
11   vs.                                     )        **ORDER**
                                             )
12   GREG SMITH, *et al.*,                   )
                                             )
13                  Respondents.             )
     _____/

14

15          This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254,

16   by a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.

17   **I. Procedural History**

18          In its order denying petitioner's direct appeal, the Nevada Supreme Court summarized the

19   facts of this case, as follows:

20              Gregory Amato met the victim at a bar in Bullhead City, Arizona, and
                thereafter left with the victim in the victim's car.  The victim's body
21              was later found in the desert in Laughlin, Nevada, and the cause of
                death was determined to be from blunt force trauma to the head by a
22              rock.  Amato was subsequently found in possession of the victim's car
                and credit cards, both of which he admitted using after he was recorded
23              on various security cameras.  After a six-day trial, a jury convicted
                Amato of burglary, murder with the use of a deadly weapon, robbery,
24              grand larceny auto, fraudulent use of a credit card and possession of a
                stolen vehicle.
25

26   ///

1  (Exhibit 90, at p. 1).[1]

2      On March 20, 2002, in the Eighth District Court for Clark County, State of Nevada,

3  petitioner was convicted, pursuant to a jury trial, of burglary (Count I), first-degree murder with the

4  use of a deadly weapon (Count II), robbery (Count III), grand larceny auto (Count IV), fraudulent use

5  of a credit card (Count V), and possession of a stolen vehicle (Count VI).  (Exhibit 43).[2]  Count VI

6  was dismissed by way of stipulation, and the trial court sentenced petitioner as follows:  1-10 years

7  on Count I; two consecutive terms of 20 years to life on Count II; 2-15 years on Count III; 1-5 years

8  on Count IV; and 1-4 years on Count V.  (*Id.*).  Counts I through IV were to run concurrently and

9  Count V was to run consecutively to Counts I through IV.  (*Id.*).

10      Petitioner appealed his conviction.  (Exhibit 44).  Due to an incomplete record, specifically, a

11  court reporter's failure to produce transcripts of parts of the trial, by order filed April 2, 2004, the

12  Nevada Supreme Court issued an order directing the state district court to reconstruct the record.

13  (Exhibit 51).  In an effort to reconstruct the missing parts of the trial transcript, affidavits were filed

14  by two deputy district attorneys who prosecuted petitioner and by two deputy public defenders who

15  represented petitioner at trial.  (Exhibits 54 & 56).  By order filed December 17, 2004, the state

16  district court found that the affidavits were an accurate representation of what happened during the

17  missing portions of the trial transcript.  (Exhibit 62).

18      Following state district court proceedings, petitioner's opening brief was filed on March 13,

19  2008.  (Exhibit 84).  On June 30, 2009, the Nevada Supreme Court issued an order of affirmance.

20  (Exhibit 90).

21  _____

22      [1]  The summary of background facts is intended only as an overview of the case, in order to
    provide context for the discussion of the issues.  Any absence of mention of specific evidence in this
23  overview does not signify that this Court has overlooked or ignored the evidence.  The Court makes no
    credibility findings or other factual findings regarding the truth of the evidence or statements of fact in
24  the state court.  No statement of fact made in describing statements, testimony, or other evidence in the
    state court, whether in this overview or in the discussion of a particular issue, constitutes a finding of
25  this Court.

26      [2]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 9-12.

2

On December 11, 2009, petitioner filed a post-conviction habeas petition in the state district court.  (Exhibit 97).  The state district court denied the petition.  (Exhibit 100).  Petitioner appealed *pro per* from the denial of his state habeas petition.  (Exhibit 101).  On September 10, 2010, the Nevada Supreme Court entered an order of affirmance.  (Exhibit 105).  Remittitur issued on October 7, 2010.  (Exhibit 106).

Petitioner dispatched his federal habeas petition to this Court on October 18, 2010.  (ECF No. 6).  The petition contains three grounds for relief.  (*Id.*).  Respondents filed a motion to dismiss the petition on March 2, 2011.  (ECF No. 8).  By order filed November 23, 2011, this Court granted in part and denied in part the motion to dismiss.  (ECF No. 16).  The Court ruled that Ground One of the petition was unexhausted, but ruled that respondents must file an answer to Grounds Two and Three.  (*Id.*).  On December 15, 2011, petitioner filed a notice voluntarily abandoning Ground One of the petition.  (ECF No. 17).  Respondents have filed an answer to Grounds Two and Three of the petition.  (ECF No. 18).  Petitioner has filed a reply.  (ECF No. 19).  The Court now addresses the merits of Grounds Two and Three of the petition.

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

3

1    to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

2    decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

3    § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

4    Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

5    a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

6    Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

7    U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable

8    standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme

9    malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

10   through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting

11   *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

12        A state court decision is an unreasonable application of clearly established Supreme Court

13   precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

14   governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

15   principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

16   529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

17   than merely incorrect or erroneous; the state court's application of clearly established federal law

18   must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether a

19   state court decision is contrary to, or an unreasonable application of federal law, this Court looks to

20   the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

21   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

22        In a federal habeas proceeding, "a determination of a factual issue made by a State court shall

23   be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

24   correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  If a claim has been

25   adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

26

4

1  in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*, 131 S.Ct.

2  1388, 1400 (2011).

3  **III.  Discussion**

4      **A.  Ground Two:  Due Process Claim Regarding Reconstruction of the Record**

5        In Ground Two, petitioner claims that his due process rights were infringed when missing

6  portions of the trial record were reconstructed for the purpose of his direct appeal.  (ECF No. 6 at pp.

7  6-7).  The portions of the trial transcript that were missing were: (1) jury selection on January 29,

8  2002; (2) a portion of the testimony of the State's witnesses on February 1, 2002; (3) testimony of

9  the defendant and one other defense witness on February 5, 2002; and (4) the settlement of jury

10  instructions and closing arguments on February 5, 2002.  (Exhibit 52).  In an effort to reconstruct the

11  missing parts of the trial transcript, affidavits were filed by two deputy district attorneys who

12  prosecuted petitioner and by two deputy public defenders who represented petitioner at trial.

13  (Exhibits 54 & 56).  By order filed December 17, 2004, the state district court found that the

14  affidavits were an accurate representation of what happened during the missing portions of the trial

15  transcript.  (Exhibit 62).

16        In rejecting petitioner's claim of ineffective assistance of appellate counsel, the Nevada

17  Supreme Court pointed out that it had previously rejected petitioner's underlying due process claim

18  on direct appeal.  (Exhibit 105, at p. 4).  In affirming petitioner's conviction on direct appeal, the

19  Nevada Supreme Court ruled as follows, regarding the preservation of the trial transcript:

20          Standard of Review

21          "'[M]eaningful, effective appellate review depends upon the
availability of an accurate record covering lower court proceedings

22  relevant to the issues on appeal.  Failure to provide an adequate record
on appeal handicaps appellate review and triggers possible due process

23  clause violations.'" Daniel v. State, 119 Nev. 498, 508, 78 P.3d 890,
897 (2003) (quoting Lopez v. State, 105 Nev. 68, 84-85, 769 P.2d

24  1276, 1287 (1989).  Thus, "[a] criminal defendant is normally entitled
to a new trial if a trial transcript has been lost or destroyed and the

25  transcript cannot be adequately reconstructed pursuant to NRAP
10(c)."  Bellows v. State, 110 Nev. 289, 291, 871 P.2d 340, 342

26  (1994).  Moreover:

5

1

2     The mere failure to make a record of a portion of the
      proceedings, however, standing alone, is not grounds
      for reversal.  Rather, an appellant must demonstrate that
3     the subject matter of the missing portions of the record
      was so significant that the appellate court cannot
      meaningfully review the appellant's contentions of error
4     and the prejudicial effect of any error.

5     Daniel, 119 Nev. at 508, 78 P.3d at 897.

6     Preservation of the trial transcript
      Amato argues that the trial transcript is not properly preserved for
7     appeal and, because the transcript was lost at no fault to Amato and the
      reconstruction is ineffective because of the length of time between trial
8     and the reconstruction effort, his conviction should be reversed.
      Amato also argues that there is no way to preserve his appellate rights
9     because both sides agree that all record of jury selection is lost.  We
      disagree and conclude that proper procedure under NRAP 10(c) was
10    followed because the district court held a hearing on the reconstruction
      of the record and, with affidavits from both sides, found that the record
11    was sufficient for appeal.

12    We have addressed very similar issues on appeal in the past.  In
      Bellows, we adopted a three-part test for reviewing the issue of
13    whether a new trial is warranted when portions of the trial record are
      lost.  110 Nev. at 293, 871 P.2d at 343.  Under this three-part test, we
14    analyze whether: 1) the appellant has complied with the procedures for
      perfecting an appeal; 2) the transcript can be reconstructed; 3) the
15    appellant's conduct has led to the inability to obtain the transcript.  Id.

16    Here, we conclude that the district court followed proper procedure
      under NRAP 10(c) and that the record has been sufficiently
17    reconstructed for appeal.  While there are portions of the record
      missing, the record was reconstructed and that reconstruction was
18    adopted by the district court.  We cannot conclude that a new trial is
      warranted based on the loss of a portion of the trial transcripts,
19    because, unlike in Bellows, the majority of the trial transcript was
      recovered in the instant case, and the rest of the record was
20    reconstructed.  Further, the district court followed the proper procedure
      in reconstructing the record and from the trial testimony that has been
21    produced there is overwhelming evidence of Amato's guilt.  We
      therefore conclude that the district court did not err in its adoption and
22    approval of the reconstruction, thus further distinguishing the case at
      bar from Bellows.

23
      Regarding Amato's assignment of error concerning the loss of the jury-
24    selection transcripts, we also conclude that this loss did not affect
      meaningful review of Amato's appeal because there were no
25    objections at trial to the jury selection and Amato fails to specify any
      error in the jury selection.

26

6

1  (Exhibit 90, at pp. 2-4).

2      In his petition, petitioner fails to identify any United States Supreme Court precedent that the

3  Nevada Supreme Court may have unreasonably applied to his case.  (ECF No. 6).  In presenting his

4  due process claim to the Nevada Supreme Court on direct appeal, petitioner relied on two state cases,

5  *Bellows v. State*, 871 P.2d 340 (Nev. 1994) and *State v. Moore*, 534 P.2d 1124 (N.M. Ct. App.

6  1975).  (Exhibit 84, at pp. 14-26).  Petitioner's federal petition likewise relies on language from the

7  *Bellows* and *Moore* state decisions.  (ECF No. 6).  The federal petition fails to identify any

8  established federal law that was unreasonably applied or with which the Nevada Supreme Court's

9  decision conflicts.  (*Id.*).

10      Moreover, the Nevada Supreme Court's decision is consistent with federal constitutional law.

11  It is settled that indigent criminal appellants are entitled to records of trial for the purpose of appeal.

12  *See Griffin v. Illinois*, 351 U.S. 12 (1956).  The United States Supreme Court has never held that the

13  loss of trial transcript is a *per se* due process violation or mandates a new trial.  Rather, it has held

14  that alternatives to a complete transcript are acceptable.

15      In *Draper v. Washington*, 372 U.S. 487 (1963), the United States Supreme Court expressly

16  stated that alternative methods of reporting trial proceedings are permissible.  372 U.S. at 495.  "A

17  statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial

18  judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill

19  of exceptions might all be adequate substitutes."  *Draper*, 372 U.S. at 495.

20      In *Britt v. North Carolina*, 404 U.S. 226 (1971), the United States Supreme Court explained

21  that there are two factors relevant to determine whether a defendant has need of a transcript: "(1) the

22  value of the transcript to the defendant in connection with the appeal or trial for which it is sought,

23  and (2) the availability of alternative devices that would fulfill the same functions as a transcript."

24  *Britt*, 404 U.S. at 227.

25      United States Supreme Court jurisprudence reflects that reconstruction of the record is one of

26  the permissible alternatives.  In *Chessman v. Teets*, 354 U.S. 156, 158 (1957), the court reporter at

7

petitioner's trial died after having dictated a little over a third of the trial.  Reconstruction of the record was subsequently conducted without the petitioner's participation.  *Id.* at 159-61.  The Court held that this violated the petitioner's due process rights.  *Id.* at 162.  However, the Court did not hold that reconstruction of the record was inappropriate, but that the petitioner's rights were violated because he "never had his day in court upon the controversial issues of fact and law involved in the settlement of the record."  *Id.* at 164.  In contrast, in this case, petitioner, through counsel, participated in the reconstruction of the record in the state district court.  (Exhibit 56, Affidavit of Deputy Public Defenders Drew R. Christensen and Thomas A. Ericsson).  As such, the Nevada Supreme Court's resolution of the issue is consistent with *Chessman*.

Also, in circumstances similar to the instant case, the Ninth Circuit has held that reconstruction of the record does not violate due process.  In *Madera v. Risley*, 885 F.2d 646, 648 (1989), a habeas petitioner claimed that his due process rights had been violated because the reconstruction of unrecorded portions of his trial were not a sufficient basis for him to effectively appeal.  The Ninth Circuit rejected petitioner's claim, adopting *Britt's* criteria for evaluating petitioner's claim and concluding that reconstruction of the record did not run afoul of those decisions.  *Id.* at 648-49.

In this case, petitioner contends that he needed portions of the untranscribed record in order to file an adequate appeal of his conviction.  (ECF No. 6, at p. 6).  Petitioner contends that the missing testimony of a detective and a defense witness was needed for his direct appeal.  (*Id.*, at pp. 6-7).  Petitioner satisfies the first criterion identified in *Britt*, the value of the transcript to the defendant in connection with the appeal for which it is sought.  *See Britt*, 404 U.S. at 227.  As to the second criterion, the availability of alternative devices that would fulfill the same function as a transcript, petitioner fails.  "A statement of facts agreed to by both sides" is a permissible alternative method of reporting trial proceedings.  *Madera v. Risley*, 885 F.2d at 649 (quoting *Mayer v. Chicago*, 404 U.S. 189, 195 (1971)); *see also Britt v. North Carolina*, 404 U.S. at 227; *Draper v. Washington*, 372 U.S. at 495.  In the instant case, the Nevada Supreme Court remanded petitioner's

case to the state district court for reconstruction of the record pursuant to the Nevada Appellate Rules of Procedure. (Exhibit 51). Affidavits were filed by two deputy district attorneys who prosecuted petitioner and by two deputy public defenders who represented petitioner at trial. (Exhibits 54 & 56). On September 8, 2004, the district court conducted a hearing regarding the issue of reconstructing the record for appeal purposes. (Exhibit 90, at p. 3; Exhibit 100, at p. 3). By order filed December 17, 2004, the state district court found that the prosecutor's affidavit was an accurate representation of what happened during the missing portion of the trial transcript. (Exhibit 62). The state district court also ruled that the voir dire was not prejudicial to petitioner because all of his objections for cause were granted and the parties were allowed their peremptory challenges. (*Id.*). The Nevada Supreme Court concluded that proper procedure under NRAP 10(c) was followed because the district court held a hearing on the reconstruction of the record and, with affidavits from both sides, found that the record was sufficient for appeal. (Exhibit 90, at p. 3). Moreover, the Nevada Supreme Court found that the trial transcripts that were produced showed overwhelming evidence of petitioner's guilt. (Exhibit 90, at pp. 3-4). The Nevada Supreme Court's ruling was not clearly erroneous, and petitioner was not prejudiced by the missing portions of the trial transcripts. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground Two of the petition, alleging a due process violation based on the reconstruction of the record, is denied.

**B. Ground Three:  Ineffective Assistance of Counsel Claim**

In Ground Three, petitioner claims ineffective assistance of appellate counsel, based on the reconstruction of the record and counsel's failure to obtain missing portions of the trial transcripts. (ECF No. 6, at pp. 9-10).

///

1       Under *Strickland*, a petitioner must show that his counsel's performance was both

2 unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors.

3 *Strickland v. Washington*, 446 U.S. 668, 684 (1984).  The *Strickland* standard also applies to claims

4 of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has

5 no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463

6 U.S. 745, 751-54 (1983).  To state a claim of ineffective assistance of appellate counsel, a petitioner

7 must demonstrate: (1) that counsel's performance was deficient in that it fell below an objective

8 standard of reasonableness, and (2) that the resulting prejudice was such that the omitted issue would

9 have a reasonable probability of success on appeal.  *Id.*

10       Petitioner asserted the same ineffective assistance of counsel claim in his state post-

11 conviction habeas petition that he asserts in Ground Three.  (Exhibit 97, at pp. 9-10A).  The Nevada

12 Supreme Court rejected this claim, ruling as follows:

13               [A]ppellant claimed that his appellate counsel was ineffective for
                failing to obtain the entire trial transcript.  Appellant failed to

14               demonstrate that counsel's performance was deficient or that he was
                prejudiced.  Portions of the trial transcript were not able to be

15               reproduced, but this court previously held on direct appeal that
                appropriate procedures were followed to reconstruct the missing

16               portions.  <u>Amato v. State</u>, Docket No. 39515 (Order of Affirmance,
                June 30, 2009).  Thus, the underlying claim was considered and

17               rejected on direct appeal.  Accordingly, appellant cannot demonstrate
                prejudice for this claim.  Therefore, the district court did not err in

18               denying this claim.

19 (Exhibit 105, at p. 4).  As discussed earlier in this order, the Nevada Supreme Court concluded that

20 proper procedure under NRAP 10(c) was followed because the district court held a hearing on the

21 reconstruction of the record and, with affidavits from both sides, found that the record was sufficient

22 for appeal.  (Exhibit 90, at p. 3).  The Nevada Supreme Court's ruling was not clearly erroneous, and

23 petitioner was not prejudiced by the missing portions of the trial transcripts.  Petitioner has not

24 shown deficient performance of appellate counsel or prejudice.  Petitioner's claim of ineffective

25 assistance of counsel is meritless.  Petitioner has failed to meet his burden of proving that the Nevada

26 Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

1  established federal law, as determined by the United States Supreme Court, or that the ruling was

2  based on an unreasonable determination of the facts in light of the evidence presented in the state

3  court proceeding.  Ground Three of the petition, alleging ineffective assistance of appellate counsel,

4  is denied.

5  **IV.  Certificate of Appealability**

6          District courts are required to rule on the certificate of appealability in the order disposing of

7  a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

8  request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal,

9  petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th

10  Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v.*

11  *Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial

12  showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C.

13  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate

14  that reasonable jurists would find the district court's assessment of the constitutional claims

15  debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry,

16  the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason;

17  that a court could resolve the issues differently; or that the questions are adequate to deserve

18  encouragement to proceed further.  *Id.*  In this case, no reasonable jurist would find this Court's

19  denial of the petition debatable or wrong.  The Court therefore denies petitioner a certificate of

20  appealability.

21  **V.  Conclusion**

22          **IT IS THEREFORE ORDERED** that the remaining grounds of the federal petition for a

23  writ of habeas corpus are **DENIED**.

24  ///

25  ///

26  ///

11

1    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

2  **APPEALABILITY.**

3    **IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT**

4  **ACCORDINGLY.**

5    DATED this 5th day of February, 2014.

6

7
                                                    _____
8                                                    LARRY R. HICKS
                                                    UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26