UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY AMATO, | ) |
|   Petitioner, | ) 3:10-cv-00670-LRH-VPC |
| vs. | ) **ORDER** |
| GREG SMITH, *et al.*, | ) |
|   Respondents. | ) |

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner. This matter comes before the Court on the merits of the petition.

**I. Procedural History**

In its order denying petitioner's direct appeal, the Nevada Supreme Court summarized the facts of this case, as follows:

> Gregory Amato met the victim at a bar in Bullhead City, Arizona, and thereafter left with the victim in the victim's car. The victim's body was later found in the desert in Laughlin, Nevada, and the cause of death was determined to be from blunt force trauma to the head by a rock. Amato was subsequently found in possession of the victim's car and credit cards, both of which he admitted using after he was recorded on various security cameras. After a six-day trial, a jury convicted Amato of burglary, murder with the use of a deadly weapon, robbery, grand larceny auto, fraudulent use of a credit card and possession of a stolen vehicle.

///

(Exhibit 90, at p. 1).[1]

On March 20, 2002, in the Eighth District Court for Clark County, State of Nevada, petitioner was convicted, pursuant to a jury trial, of burglary (Count I), first-degree murder with the use of a deadly weapon (Count II), robbery (Count III), grand larceny auto (Count IV), fraudulent use of a credit card (Count V), and possession of a stolen vehicle (Count VI).  (Exhibit 43).[2]  Count VI was dismissed by way of stipulation, and the trial court sentenced petitioner as follows:  1-10 years on Count I; two consecutive terms of 20 years to life on Count II; 2-15 years on Count III; 1-5 years on Count IV; and 1-4 years on Count V.  (*Id.*).  Counts I through IV were to run concurrently and Count V was to run consecutively to Counts I through IV.  (*Id.*).

Petitioner appealed his conviction.  (Exhibit 44).  Due to an incomplete record, specifically, a court reporter's failure to produce transcripts of parts of the trial, by order filed April 2, 2004, the Nevada Supreme Court issued an order directing the state district court to reconstruct the record.  (Exhibit 51).  In an effort to reconstruct the missing parts of the trial transcript, affidavits were filed by two deputy district attorneys who prosecuted petitioner and by two deputy public defenders who represented petitioner at trial.  (Exhibits 54 & 56).  By order filed December 17, 2004, the state district court found that the affidavits were an accurate representation of what happened during the missing portions of the trial transcript.  (Exhibit 62).

Following state district court proceedings, petitioner's opening brief was filed on March 13, 2008.  (Exhibit 84).  On June 30, 2009, the Nevada Supreme Court issued an order of affirmance.  (Exhibit 90).

---

[1]  The summary of background facts is intended only as an overview of the case, in order to provide context for the discussion of the issues.  Any absence of mention of specific evidence in this overview does not signify that this Court has overlooked or ignored the evidence.  The Court makes no credibility findings or other factual findings regarding the truth of the evidence or statements of fact in the state court.  No statement of fact made in describing statements, testimony, or other evidence in the state court, whether in this overview or in the discussion of a particular issue, constitutes a finding of this Court.

[2]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 9-12.

On December 11, 2009, petitioner filed a post-conviction habeas petition in the state district court. (Exhibit 97). The state district court denied the petition. (Exhibit 100). Petitioner appealed *pro per* from the denial of his state habeas petition. (Exhibit 101). On September 10, 2010, the Nevada Supreme Court entered an order of affirmance. (Exhibit 105). Remittitur issued on October 7, 2010. (Exhibit 106).

Petitioner dispatched his federal habeas petition to this Court on October 18, 2010. (ECF No. 6). The petition contains three grounds for relief. (*Id.*). Respondents filed a motion to dismiss the petition on March 2, 2011. (ECF No. 8). By order filed November 23, 2011, this Court granted in part and denied in part the motion to dismiss. (ECF No. 16). The Court ruled that Ground One of the petition was unexhausted, but ruled that respondents must file an answer to Grounds Two and Three. (*Id.*). On December 15, 2011, petitioner filed a notice voluntarily abandoning Ground One of the petition. (ECF No. 17). Respondents have filed an answer to Grounds Two and Three of the petition. (ECF No. 18). Petitioner has filed a reply. (ECF No. 19). The Court now addresses the merits of Grounds Two and Three of the petition.

**II. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

3

to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

4

in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**III. Discussion**

    **A. Ground Two: Due Process Claim Regarding Reconstruction of the Record**

In Ground Two, petitioner claims that his due process rights were infringed when missing portions of the trial record were reconstructed for the purpose of his direct appeal. (ECF No. 6 at pp. 6-7). The portions of the trial transcript that were missing were: (1) jury selection on January 29, 2002; (2) a portion of the testimony of the State's witnesses on February 1, 2002; (3) testimony of the defendant and one other defense witness on February 5, 2002; and (4) the settlement of jury instructions and closing arguments on February 5, 2002. (Exhibit 52). In an effort to reconstruct the missing parts of the trial transcript, affidavits were filed by two deputy district attorneys who prosecuted petitioner and by two deputy public defenders who represented petitioner at trial. (Exhibits 54 & 56). By order filed December 17, 2004, the state district court found that the affidavits were an accurate representation of what happened during the missing portions of the trial transcript. (Exhibit 62).

In rejecting petitioner's claim of ineffective assistance of appellate counsel, the Nevada Supreme Court pointed out that it had previously rejected petitioner's underlying due process claim on direct appeal. (Exhibit 105, at p. 4). In affirming petitioner's conviction on direct appeal, the Nevada Supreme Court ruled as follows, regarding the preservation of the trial transcript:

> Standard of Review
> "'[M]eaningful, effective appellate review depends upon the availability of an accurate record covering lower court proceedings relevant to the issues on appeal. Failure to provide an adequate record on appeal handicaps appellate review and triggers possible due process clause violations.'" Daniel v. State, 119 Nev. 498, 508, 78 P.3d 890, 897 (2003) (quoting Lopez v. State, 105 Nev. 68, 84-85, 769 P.2d 1276, 1287 (1989). Thus, "[a] criminal defendant is normally entitled to a new trial if a trial transcript has been lost or destroyed and the transcript cannot be adequately reconstructed pursuant to NRAP 10(c)." Bellows v. State, 110 Nev. 289, 291, 871 P.2d 340, 342 (1994). Moreover:

5

> The mere failure to make a record of a portion of the proceedings, however, standing alone, is not grounds for reversal. Rather, an appellant must demonstrate that the subject matter of the missing portions of the record was so significant that the appellate court cannot meaningfully review the appellant's contentions of error and the prejudicial effect of any error.

Daniel, 119 Nev. at 508, 78 P.3d at 897.

Preservation of the trial transcript

Amato argues that the trial transcript is not properly preserved for appeal and, because the transcript was lost at no fault to Amato and the reconstruction is ineffective because of the length of time between trial and the reconstruction effort, his conviction should be reversed. Amato also argues that there is no way to preserve his appellate rights because both sides agree that all record of jury selection is lost. We disagree and conclude that proper procedure under NRAP 10(c) was followed because the district court held a hearing on the reconstruction of the record and, with affidavits from both sides, found that the record was sufficient for appeal.

We have addressed very similar issues on appeal in the past. In Bellows, we adopted a three-part test for reviewing the issue of whether a new trial is warranted when portions of the trial record are lost. 110 Nev. at 293, 871 P.2d at 343. Under this three-part test, we analyze whether: 1) the appellant has complied with the procedures for perfecting an appeal; 2) the transcript can be reconstructed; 3) the appellant's conduct has led to the inability to obtain the transcript. Id.

Here, we conclude that the district court followed proper procedure under NRAP 10(c) and that the record has been sufficiently reconstructed for appeal. While there are portions of the record missing, the record was reconstructed and that reconstruction was adopted by the district court. We cannot conclude that a new trial is warranted based on the loss of a portion of the trial transcripts, because, unlike in Bellows, the majority of the trial transcript was recovered in the instant case, and the rest of the record was reconstructed. Further, the district court followed the proper procedure in reconstructing the record and from the trial testimony that has been produced there is overwhelming evidence of Amato's guilt. We therefore conclude that the district court did not err in its adoption and approval of the reconstruction, thus further distinguishing the case at bar from Bellows.

Regarding Amato's assignment of error concerning the loss of the jury-selection transcripts, we also conclude that this loss did not affect meaningful review of Amato's appeal because there were no objections at trial to the jury selection and Amato fails to specify any error in the jury selection.

1  (Exhibit 90, at pp. 2-4).

2  In his petition, petitioner fails to identify any United States Supreme Court precedent that the Nevada Supreme Court may have unreasonably applied to his case. (ECF No. 6). In presenting his due process claim to the Nevada Supreme Court on direct appeal, petitioner relied on two state cases, *Bellows v. State*, 871 P.2d 340 (Nev. 1994) and *State v. Moore*, 534 P.2d 1124 (N.M. Ct. App. 1975). (Exhibit 84, at pp. 14-26). Petitioner's federal petition likewise relies on language from the *Bellows* and *Moore* state decisions. (ECF No. 6). The federal petition fails to identify any established federal law that was unreasonably applied or with which the Nevada Supreme Court's decision conflicts. (*Id.*).

Moreover, the Nevada Supreme Court's decision is consistent with federal constitutional law. It is settled that indigent criminal appellants are entitled to records of trial for the purpose of appeal. *See Griffin v. Illinois*, 351 U.S. 12 (1956). The United States Supreme Court has never held that the loss of trial transcript is a *per se* due process violation or mandates a new trial. Rather, it has held that alternatives to a complete transcript are acceptable.

In *Draper v. Washington*, 372 U.S. 487 (1963), the United States Supreme Court expressly stated that alternative methods of reporting trial proceedings are permissible. 372 U.S. at 495. "A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes." *Draper*, 372 U.S. at 495.

In *Britt v. North Carolina*, 404 U.S. 226 (1971), the United States Supreme Court explained that there are two factors relevant to determine whether a defendant has need of a transcript: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Britt*, 404 U.S. at 227.

United States Supreme Court jurisprudence reflects that reconstruction of the record is one of the permissible alternatives. In *Chessman v. Teets*, 354 U.S. 156, 158 (1957), the court reporter at

7

1 petitioner's trial died after having dictated a little over a third of the trial.  Reconstruction of the
2 record was subsequently conducted without the petitioner's participation.  *Id.* at 159-61.  The Court
3 held that this violated the petitioner's due process rights.  *Id.* at 162.  However, the Court did not
4 hold that reconstruction of the record was inappropriate, but that the petitioner's rights were violated
5 because he "never had his day in court upon the controversial issues of fact and law involved in the
6 settlement of the record."  *Id.* at 164.  In contrast, in this case, petitioner, through counsel,
7 participated in the reconstruction of the record in the state district court. (Exhibit 56, Affidavit of
8 Deputy Public Defenders Drew R. Christensen and Thomas A. Ericsson).  As such, the Nevada
9 Supreme Court's resolution of the issue is consistent with *Chessman*.

10 　　　　Also, in circumstances similar to the instant case, the Ninth Circuit has held that
11 reconstruction of the record does not violate due process.  In *Madera v. Risley*, 885 F.2d 646, 648
12 (1989), a habeas petitioner claimed that his due process rights had been violated because the
13 reconstruction of unrecorded portions of his trial were not a sufficient basis for him to effectively
14 appeal.  The Ninth Circuit rejected petitioner's claim, adopting *Britt's* criteria for evaluating
15 petitioner's claim and concluding that reconstruction of the record did not run afoul of those
16 decisions.  *Id.* at 648-49.

17 　　　　In this case, petitioner contends that he needed portions of the untranscribed record in order
18 to file an adequate appeal of his conviction.  (ECF No. 6, at p. 6).  Petitioner contends that the
19 missing testimony of a detective and a defense witness was needed for his direct appeal.  (*Id.*, at pp.
20 6-7).  Petitioner satisfies the first criterion identified in *Britt*, the value of the transcript to the
21 defendant in connection with the appeal for which it is sought.  *See Britt*, 404 U.S. at 227.  As to the
22 second criterion, the availability of alternative devices that would fulfill the same function as a
23 transcript, petitioner fails.  "A statement of facts agreed to by both sides" is a permissible alternative
24 method of reporting trial proceedings.  *Madera v. Risley*, 885 F.2d at 649 (quoting *Mayer v.*
25 *Chicago*, 404 U.S. 189, 195 (1971)); *see also Britt v. North Carolina*, 404 U.S. at 227; *Draper v.*
26 *Washington*, 372 U.S. at 495.  In the instant case, the Nevada Supreme Court remanded petitioner's

case to the state district court for reconstruction of the record pursuant to the Nevada Appellate Rules of Procedure. (Exhibit 51). Affidavits were filed by two deputy district attorneys who prosecuted petitioner and by two deputy public defenders who represented petitioner at trial. (Exhibits 54 & 56). On September 8, 2004, the district court conducted a hearing regarding the issue of reconstructing the record for appeal purposes. (Exhibit 90, at p. 3; Exhibit 100, at p. 3). By order filed December 17, 2004, the state district court found that the prosecutor's affidavit was an accurate representation of what happened during the missing portion of the trial transcript. (Exhibit 62). The state district court also ruled that the voir dire was not prejudicial to petitioner because all of his objections for cause were granted and the parties were allowed their peremptory challenges. (*Id.*). The Nevada Supreme Court concluded that proper procedure under NRAP 10(c) was followed because the district court held a hearing on the reconstruction of the record and, with affidavits from both sides, found that the record was sufficient for appeal. (Exhibit 90, at p. 3). Moreover, the Nevada Supreme Court found that the trial transcripts that were produced showed overwhelming evidence of petitioner's guilt. (Exhibit 90, at pp. 3-4). The Nevada Supreme Court's ruling was not clearly erroneous, and petitioner was not prejudiced by the missing portions of the trial transcripts. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground Two of the petition, alleging a due process violation based on the reconstruction of the record, is denied.

### B. Ground Three: Ineffective Assistance of Counsel Claim

In Ground Three, petitioner claims ineffective assistance of appellate counsel, based on the reconstruction of the record and counsel's failure to obtain missing portions of the trial transcripts. (ECF No. 6, at pp. 9-10).

///

9

1    Under *Strickland*, a petitioner must show that his counsel's performance was both
2    unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors.
3    *Strickland v. Washington*, 446 U.S. 668, 684 (1984).  The *Strickland* standard also applies to claims
4    of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has
5    no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463
6    U.S. 745, 751-54 (1983).  To state a claim of ineffective assistance of appellate counsel, a petitioner
7    must demonstrate: (1) that counsel's performance was deficient in that it fell below an objective
8    standard of reasonableness, and (2) that the resulting prejudice was such that the omitted issue would
9    have a reasonable probability of success on appeal.  *Id.*
10   Petitioner asserted the same ineffective assistance of counsel claim in his state post-
11   conviction habeas petition that he asserts in Ground Three.  (Exhibit 97, at pp. 9-10A).  The Nevada
12   Supreme Court rejected this claim, ruling as follows:

> [A]ppellant claimed that his appellate counsel was ineffective for failing to obtain the entire trial transcript.  Appellant failed to demonstrate that counsel's performance was deficient or that he was prejudiced.  Portions of the trial transcript were not able to be reproduced, but this court previously held on direct appeal that appropriate procedures were followed to reconstruct the missing portions.  Amato v. State, Docket No. 39515 (Order of Affirmance, June 30, 2009).  Thus, the underlying claim was considered and rejected on direct appeal.  Accordingly, appellant cannot demonstrate prejudice for this claim.  Therefore, the district court did not err in denying this claim.

19   (Exhibit 105, at p. 4).  As discussed earlier in this order, the Nevada Supreme Court concluded that
20   proper procedure under NRAP 10(c) was followed because the district court held a hearing on the
21   reconstruction of the record and, with affidavits from both sides, found that the record was sufficient
22   for appeal.  (Exhibit 90, at p. 3).  The Nevada Supreme Court's ruling was not clearly erroneous, and
23   petitioner was not prejudiced by the missing portions of the trial transcripts.  Petitioner has not
24   shown deficient performance of appellate counsel or prejudice.  Petitioner's claim of ineffective
25   assistance of counsel is meritless.  Petitioner has failed to meet his burden of proving that the Nevada
26   Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground Three of the petition, alleging ineffective assistance of appellate counsel, is denied.

## IV. Certificate of Appealability

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's denial of the petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

## V. Conclusion

**IT IS THEREFORE ORDERED** that the remaining grounds of the federal petition for a writ of habeas corpus are **DENIED**.

///
///
///

11

1  **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

DATED this 5th day of February, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE